1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALMA CLARISA HERNANDEZ,** | **Case No.: 11-CV-02247 YGR** |
| **Plaintiff,** | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| vs. | |
| **POLANCO ENTERPRISES, INC. ,** | |
| **Defendant.** | |

Plaintiff Alma Clarisa Hernandez, who has used a wheelchair since 2004, brought this action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, alleging that architectural barriers at Defendant Polanco Enterprises, Inc.'s gasoline station denied her full and equal enjoyment and use of the facility, including the station's attached convenience store and the restroom inside. Plaintiff's First Amended Complaint (Dkt. No. 36 ["FAC"]) identifies 40 alleged architectural barriers at the subject gas station, upon which she bases four distinct legal claims for violations of: (1) the ADA; (2) the California Disabled Persons Act, Cal. Civ. Code §§ 54 and 54.1 ("DPA"); (3) the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 51.5 ("Unruh Act"); and (4) California Health & Safety Code § 19953. Since this action commenced, Defendant has undertaken an extensive remediation effort eliminating 37 barriers. Notwithstanding that effort, Plaintiff avers that four barriers exist post-remediation: two that Plaintiff claims were never corrected and two that Defendant allegedly created during its remediation efforts.

United States District Court
Northern District of California

1    Now before the Court are fully briefed cross-motions for summary judgment on all claims.

2  *See* Dkt. Nos. 46 ("Pl. MSJ"), 47 ("Def. MSJ"), 58 ("Pl. Opp'n"), 60 ("Def. Opp'n"), 63 ("Pl.

3  Reply"), & 64 ("Def. Reply").  This Order addresses the alleged remaining four barriers: (i) the

4  alleged lack of a low-level push plate to operate the power-assisted door installed at the facility's

5  accessible entrance; (ii) the allegedly excessive slope of a designated accessible route from the public

6  sidewalk to the entrance; (iii) the allegedly excessive slope of a new landing constructed at that

7  entrance; and (iv) the alleged lack of sufficient space for a wheelchair to maneuver in the gas

8  station's restroom.  The cross-motions turn on three issues.  The first issue is whether the alleged

9  remaining barriers were pled adequately in the FAC.  If they were and the barriers exist, the second

10  issue is whether Defendant is shielded from ADA liability because removal of the barrier is not

11  "readily achievable;" Plaintiff argues that Defendant waived this defense during discovery.  The third

12  issue is whether the most recent iteration of the California Building Code applies to the restroom

13  altered by Defendant as part of its remediation efforts.

14    Having carefully considered the papers submitted and the record, and having had the benefit

15  of oral argument, for good cause appearing the Court **DENIES** Plaintiff's motion for summary

16  judgment and **PARTLY GRANTS AND PARTLY DENIES** Defendant's cross-motion, as set forth below.

17  **I.      FACTUAL AND PROCEDURAL BACKGROUND**

18         **A.      THE PARTIES AND THE INITIAL PROCEEDINGS**

19    Plaintiff suffers from progressively deteriorating conditions of scoliosis/kyphoscoliosis, Pott's

20  disease, and paraplegia.  Plaintiff also has experienced renal failure and receives dialysis three times

21  per week.  As a result of her conditions, Plaintiff can walk only with the aid of arm braces, and then

22  only for a short time.  Since approximately 2004, she has used a wheelchair to go out in public.

23    Defendant operates a gasoline station that was built in 1969.  The station includes a

24  convenience store, inside of which is a restroom.  The station is located on the route Plaintiff travels

25  between her residence and the center where she receives her dialysis.  Plaintiff sometimes stops at

26  Defendant's gasoline station to get gasoline and purchase items from the convenience store, and she

27  would like to be able to use the restroom there.  On May 21, 2010, Plaintiff visited Defendant's

28

United States District Court
Northern District of California

1  gasoline station but was unable to enter the convenience store because the sidewalk at the entrance

2  was too narrow.  Plaintiff filed this lawsuit on May 6, 2011.

3    Plaintiff seeks relief under the ADA and California state law in the form of an injunction

4  requiring Defendant to remove the barriers that deny her full and equal access to the gas station.

5  Plaintiff further seeks a declaration that Defendant violated the ADA, statutory damages under

6  California's Unruh Act or DPA, and prevailing-party attorney fees and costs.

7    On August 12, 2011, Plaintiff's designated expert, Gary Layman, inspected Defendant's gas

8  station.  Dkt. No. 46-12 ("Layman Decl.") ¶ 4.  Layman produced a written report that purports to

9  summarize his observations, dated August 24, 2012.  Dkt. No. 51-1 ("Layman Initial Report").  This

10  report also sets forth forty-six separate "requirements" which, if accomplished, would, in Layman's

11  opinion, bring the gas station into compliance with the 2010 ADA Standards for Accessible Design

12  ("2010 ADA Standards") and the 2010 California Building Code ("2010 CBC.").[1]  *Id.* at 14-19.[2]

13    On July 2, 2012, Plaintiff sought leave to file an amended complaint, which the Court

14  granted.  Dkt. Nos. 32, 35.  Plaintiff filed the FAC on August 8, 2012.  Paragraph 11 of the FAC

15  enumerates forty alleged barriers to Plaintiff's use of Defendant's gasoline station.  FAC ¶¶ 11(a)-

16  11(nn).

17    On August 22, 2012, Defendant filed an Answer to the FAC asserting thirty-one affirmative

18  defenses.  Dkt. No. 37 ("Answer").  Defendant's twenty-second affirmative defense states: "[T]he

19  removal of any barriers, if any exist, the fact of which is expressly denied, [was] and [is] not readily

20  achievable and easily accomplishable so as to be accomplished by Defendants without much

21  difficulty or expense.  As such the overall impact of such removal would be financially detrimental to

22  Defendants."[3]  *Id.* at 11.  That defense is a recognized affirmative defense to ADA liability.  *See*, *e.g.*,

23  *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1133 n.7 (E.D. Cal. 2007) (collecting cases

24  where defense was asserted).

25

26  [1] The 2010 CBC is codified in the California Code of Regulations, Title 24, Part 2.

27  [2] Where an exhibit is bates-stamped, the Court cites to the bates-stamp's final digits.

28  [3] A second defendant was dismissed by stipulation on September 24, 2012.

United States District Court
Northern District of California

**B.** **DISCOVERY ACTIVITIES RELATING TO THE READILY-ACHIEVABLE DEFENSE**

On September 24, 2012, Defendant provided supplemental responses to interrogatories propounded by Plaintiff. Dkt. No. 58-5 ("Def. Supp. Interrog. Resp."). Plaintiff's ninth interrogatory asked Defendant to identify any of the barriers listed in paragraphs 10 and 11 of the FAC for which removal was not "readily achievable." *Id.* at 11. Defendant responded that the alleged barriers either did not exist or were in the process of being brought "into compliance with all federal and state laws," and that consequently Defendant did "not contend that it [was] not 'readily achievable' to 'remove' those barriers." *Id.* at 12. Defendant further stated that, although some remediation efforts were incomplete, it was "not aware of any additional unanticipated or unforeseen modifications or 'alterations,' and/or any additional associated costs, that may be required to remove the alleged 'barriers,' and therefore [was] unable to state at this time which of the alleged 'barriers' are not 'readily achievable' to remove, if any." *Id.* Defendant further stated that it would amend its supplemental responses if it learned that removal of any of the specified barriers was not readily achievable. *Id.* at 12-13.

In a similar vein, Plaintiff's tenth and eleventh interrogatories asked, respectively, for details about the difficulties that made removal of any barrier not readily achievable, and for details about any impact on the gas station that would result from barrier removal. *Id.* at 13-15. Defendant gave substantially the same answer that it did to the ninth interrogatory: it did not anticipate being unable to remove any barriers, but would supplement its responses to address the readily-achievable defense if it was. *See id.* Defendant also declined to produce its "financial statements, profit and loss statements, cash flow statements, balance sheets, tax returns, and income statements . . . for the past five (5) years," reciting substantially the same reasons. Dkt. No. 58-6 ("Def. RFP Resp.") at 10-11.

On September 26, 2012, Plaintiff took the deposition of David Polanco Sr., the President of Defendant Polanco Enterprises, Inc. Dkt. No. 58-7 ("Polanco Sr. Dep."). During the deposition, Defendant's counsel stated on the record that the parties had "stipulated in writing that [certain financial documents] need not be produced at this point unless defendants raise the readily achievable affirmative defense, and that we would take up that issue at a later time." *Id.* at 20:15-19. On September 28, 2012, the time for fact discovery ended. Dkt. No. 28 at 1.

C.   **LITIGATION STAYED FOR REMEDIATION**

On November 9, 2012, in anticipation of the filing of motions for summary judgment, Defendant requested a 120-day stay of the action during which it would "complete the remaining construction/alterations and file a cross-MSJ, which will dispose of this action in its entirety."  Dkt. No. 43.  Defendant represented that it could not yet determine "whether the 'not readily achievable' defense should be raised with respect to any of the remaining alleged 'barriers' . . . ."  *Id.* at 2-3. Defendant informed the Court that it anticipated being able, at the end of the 120-day period, either to remove the remaining barriers identified in the FAC or determine for which of those barriers it would raise the readily-achievable defense.  *Id.* at 3.  Defendant proposed that the parties: serve supplemental expert reports to assess whether Defendant's remediation efforts had cured the barriers alleged in the FAC by March 11, 2013; file a list of stipulated undisputed facts by March 18, 2013; and file their cross-motions for summary judgment by March 25, 2013.

On November 13, 2012, the Court issued a scheduling order adopting Defendant's proposal. Dkt. No. 44.

D.   **POST-REMEDIATION DEVELOPMENTS**

On March 1, 2013, ten days before the parties' deadline to serve supplemental expert reports, Plaintiff's designated expert, Layman, re-inspected the gas station.  Layman Decl. ¶ 5.  Layman observed that the gas station had undergone "significant alterations" since his initial visit in August 2011.  *Id.* ¶ 7.  Layman found that most of the barriers he had identified during his initial inspection in August 2011 had been removed, but that some barriers still existed.  *Id.* ¶ 4.  Layman purported to have identified seven new violations of the ADA, the CBC, or both.  *Id.* ¶ 5.  Of the seven purported violations, four are relevant here, namely: (1) excessive slope on the designated accessible route, ranging from 3.7 to 4.7 percent; (2) excessive slope of 2.9 percent on the landing for the entrance door;[4] (3) the lack of a low-level push plate on the automatic door-opener system; and (4) only 39.25 inches of clear floor space in front of the toilet when there should have been 48 inches.  *See id.*; *see*

---

[4] The applicable 2010 ADA Standards require both the accessible route and the entrance landing to have a slope no greater than 1:48, which is equivalent to 2.08333 percent.  *See* 2010 ADA Standards §§ 304.2, 403.3, 404.2.4.4, 405.7.1.  The parties refer to this standard as "2 percent."

United States District Court
Northern District of California

1    *also* Dkt. No. 51-5 ("Layman Supp. Report") (identifying these purported barriers).[5]   The parties'

2    cross-motions center on those four purported barriers, herein denominated as the "accessible-route,"

3    "entrance-landing," "low-level push plate," and "restroom-space" barriers, respectively.[6]

4    **II.    LEGAL STANDARD**

5        A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or

6    defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute

7    as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*

8        A party seeking summary judgment bears the initial burden of informing the court of the basis

9    for its motion, and of identifying those portions of the pleadings and discovery responses that

10   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317,

11   323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty*

12   *Lobby. Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is

13   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Wellington v.*

14   *Lyon Cnty. Sch. Dist.*, 187 F.3d 1150, 1154 (9th Cir. 1999) (citing *Anderson*, 477 U.S. at 248).

15   Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *T.W.*

16   *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

17   **III.    DISCUSSION**

18       As an initial matter, with respect to the 37 barriers identified in the FAC whose remediation

19   Plaintiff concedes, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS**

20   Defendant's cross-motion.  Where, as here, a private plaintiff brings an ADA claim seeking to enjoin

---

[5] The parties agree that three barriers stemming from a missing handrail and the positioning of a grab bar in the restroom have been remediated.  *See* Dkt. No. 78 ("Joint Fact Stmt."), Chart 3.

[6] Plaintiff claims that the low-level push plate and restroom-space barriers were created by Defendant's remediation efforts.  With respect to the low-level push plate barrier, Layman indicated that an upper push plate had been installed at the convenience store entrance but that the 2010 ADA Standards and 2010 CBC Standards required "both an upper and a lower push plate."  Layman Decl. ¶ 5(d).  According to Plaintiff, Defendant created the low-level push plate barrier by failing to include a low-level push plate when installing a new power-assisted door.  As to restroom-space barrier, Plaintiff's position is that Defendant undertook extensive remodeling in the restroom and, in doing so, repositioned the toilet from a compliant location within the restroom to a noncompliant location.  *See id.* ¶ 9.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  a defendant to remove an architectural barrier, removal of the barrier before final judgment moots the

2  ADA claim based on that barrier.  *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir.

3  2011); *see also Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (ADA claims became

4  moot when plaintiff received the accommodation he sought).  Where a state-law claim is based

5  entirely on a mooted ADA claim, it follows that the state-law claim is mooted as well.  Here, the

6  undisputed facts establish that 37 of the 40 barriers identified in the FAC have been remediated and

7  brought into ADA compliance.  Joint. Fact. Stmt. at 2-10.  Further, Plaintiff has made no showing

8  that those barriers could support state-law claims independent of the alleged ADA violations.

9  Defendant is therefore entitled to judgment in its favor on all claims based on those barriers.

10      The Court now turns to the four alleged barriers at the center of this dispute.

11  **A.    ADEQUACY OF FAC AS TO FOUR BARRIERS AT ISSUE**

12      Defendant challenges three of the four alleged barriers on the ground that the FAC fails to

13  give sufficient notice of them.  Def. Opp'n at 9 (low-level push plate), 10-12 (entrance landing), 15-

14  17 (accessible route).  In barrier removal cases, an ADA plaintiff may prevail only with respect to

15  barriers alleged in the operative complaint.  *Oliver*, 654 F.3d at 908; *see also Carr v. L.A. Fitness

16  Int'l LLC*, SACV 12-1071-JST, 2013 WL 3851230, at *6 (C.D. Cal. July 23, 2013) (relying on *Oliver*

17  to bar relief for barriers not alleged in complaint); *Paulick v. Starwood Hotels & Resorts Worldwide,

18  Inc.*, C-10-01919 JCS, 2012 WL 2990760, at *12-13 (N.D. Cal. July 20, 2012) (same); *O'Campo v.

19  Chico Crossroads*, CIV S-10-1100-KJM, 2011 WL 5241351, at *2-3 (E.D. Cal. Oct. 31, 2011)

20  (same); *Strong v. Walgreen Co.*, 09CV611 WQH BLM, 2011 WL 5374125, at *4 (S.D. Cal. Nov. 8,

21  2011) (same).  This rule stems from the notice requirements of Federal Rule of Civil Procedure 8.

22  *See Oliver*, 654 F.3d at 908-09 (discussing *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th

23  Cir. 2006)).  Only barriers identified "in the complaint itself" satisfy Rule 8: "a defendant is not

24  deemed to have fair notice of barriers identified elsewhere."  *Id.* at 909.  That includes barriers

25  identified for the first time in an expert report.  *Id.*; *Carr*, 2013 WL 3851230, at *6; *Paulick*, 2012

26  WL 2990760, at *12; *Strong*, 2011 WL 5374125, at *4; *see also Rush v. Highgrove Restaurants, Inc.*,

27  --- F. App'x ---, 2013 WL 1288068, at *1 n.1 (9th Cir. Apr. 1, 2013) (refusing to consider claims

28  "first identified by [plaintiff's] expert in an untimely affidavit submitted in response to [defendant's]

1    motion for summary judgment" because the claims were not included in plaintiff's amended

2    complaint and "she did not seek leave to file a second amended complaint").

3           *Oliver* offered two justifications for requiring ADA plaintiffs to identify all barriers in their

4    operative complaints. *Paulick*, 2012 WL 2990760, at *12.  "First, it reasoned that identifying the

5    specific barriers that are at issue only in the expert report does not provide fair notice because it

6    leaves a defendant guessing as to which barriers the plaintiff will actually proceed with." *Id.*

7    "Second, it pointed out that expert reports are typically completed later in the case, giving rise to

8    prejudice to a defendant who has already incurred litigation costs defending under the plaintiff's

9    earlier theory." *Id.*

10          While *Oliver* clearly states that the operative complaint must identify all barriers for which

11   relief is sought, how much specificity is required when alleging those barriers is less clear.  The two

12   most recent Ninth Circuit opinions squarely addressing pleading standards in ADA barrier cases are

13   *Oliver* and *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007).  A

14   district court opinion, *Sharp*, reconciled the holdings of *Oliver* and *Skaff* by identifying two different

15   "pleading approaches," both of which may satisfy both Rule 8.  *See Sharp v. Islands California

16   Arizona LP*, 900 F. Supp. 2d 1101, 1105-08 (S.D. Cal. 2012).  One approach, apparently endorsed in

17   *Skaff*, is to identify a specific area where barriers exist, for example, a bedroom.  *See id.* at 1107.

18   Doing so places the defendant on notice that "discovery is needed to determine the exact barriers in

19   the" area.  *Id.*  The other approach, apparently endorsed in *Oliver*, requires a plaintiff to identify each

20   barrier presented by an architectural feature with enough specificity to preclude the plaintiff from

21   later alleging a different barrier stemming from the same feature.  *See id.*  This level of specificity

22   prevents plaintiffs from gradually disclosing the existence of barriers, a practice that prejudices

23   defendants and is plainly aimed at winning attorney fees rather than remediating discriminatory

24   barriers.  *See*, *e.g.*, *Oliver*, 654 F.3d at 906 n.7 (There, "[plaintiff's] counsel later explained that his

25   delays in identifying the barriers at the facility were part of his legal strategy: he purposely 'forces

26   the defense to wait until expert disclosures (or discovery) before revealing a complete list of barriers,'

27   because otherwise a defendant could remove all the barriers prior to trial and moot the entire case.").

28   The Court finds *Sharp* persuasive and applies its reasoning in this case.

8

United States District Court
Northern District of California

Here, the FAC alleges, in pertinent part, that: "A properly identified and configured accessible route is not provided from the public way and accessible parking to the accessible entrance," FAC ¶ 11(b); "Proper 60" x 60" door landings are not provided at all accessible entrances and exits," *id.* ¶ 11(n); and "[t]he restroom does not provide sufficient space for a wheelchair to maneuver," *id.* ¶ 11(gg). Plaintiff acknowledges that the low-level push plate barrier, as well as the restroom-space barrier as it is currently, and more specifically, framed, are not identified in the FAC. *See* Pl. Reply at 1 ("The two barriers not alleged in the FAC are [Defendant]'s failure to provide a lower level push plate at the automatic door opener, and the failure to provide 48" in front of the toilet."). Plaintiff argues, however, that she nevertheless may proceed as to these alleged barriers because (i) Defendant knew or should have known of them and (ii) barring Plaintiff from seeking relief from all the barriers she can now identify would contravene Ninth Circuit authority. *Id.* at 2-4. Defendant, on the other hand, argues that the accessible-route, entrance-landing, or low-level push plate barriers are pled in too general a manner to have provided Defendant with fair notice of either the barrier's existence or Plaintiff's intent to seek relief for it. Def. Reply at 2-4; 7-8; 9.

Neither party is entirely correct. Applying *Sharp*, the Court concludes that the FAC put Defendant on notice of three of the four remaining alleged barriers. First, paragraph 11(b) put Defendant on notice that Plaintiff sought relief for the lack of a "properly identified and configured" accessible route. That allegation is specific enough to have enabled Defendant to ascertain where such a route should have been located and how it should have been configured. Second, the entrance-landing allegation of paragraph 11(n) put Defendant on notice that it needed to bring the entrance landing into compliance with applicable standards. In both cases, the Court gives substantial weight to the wording of the allegations, which state that the gas station lacks not just *any* entrance landing measuring at least 60 inches square or *any* accessible route, but "proper" ones. Third, paragraph 11(gg) put Defendant on notice of a need to bring the restroom into compliance by adequately identifying the area where the alleged barrier could be found (the restroom) and the type of barrier alleged (insufficient space for a wheelchair). Plaintiff's concession that the restroom-space barrier as presently framed is missing from the FAC is immaterial. Paragraph 11(gg) notified Defendant of the need to provide "sufficient space" for a wheelchair to maneuver in the restroom.

9

1  How much space is "sufficient" is a question controlled by the building standards upon which

2  Plaintiff based her ADA and state-law claims.  Paragraph 11(gg), in concert with Plaintiff's legal

3  claims, put Defendant on sufficient notice to enable it to prepare a defense, including attempting to

4  remediate the alleged barrier and moot any claims based on it.  In doing so, paragraph 11(gg)

5  satisfied Rule 8 and *Oliver*.

6       The Court rejects Defendant's argument that it lacked fair notice of the entrance-landing

7  barrier because the Layman Initial Report did not identify the entrance landing's slope as a barrier.

8  Def. Opp'n at 10-11; Def. Reply at 8.  Defendant asserts that it modified the entrance landing by

9  laying new concrete around it to expand its size, without modifying the preexisting landing.  Def.

10  Opp'n at 4; Dkt. No. 60-2 ("Polanco Jr. Supp. Decl.") ¶ 5.  The Layman Initial Report does not

11  identify the slope of the pre-modification landing as a barrier, even though the Layman Supplemental

12  Report does.  According to Defendant, both reports concern the same slab of concrete, and

13  accordingly the Court must bar as insufficiently pled any claim based on the landing slope because, if

14  its slope truly were excessive, Layman would have identified that fact in his Initial Report and

15  Plaintiff would have alleged the barrier in her FAC.  This argument is unavailing for two reasons.

16  First, the touchstone of notice is the operative complaint, not the content of expert reports. *Oliver*,

17  654 F.3d at 909.  Second, as Plaintiff points out (Pl. Reply at 14), the argument, in its essence, merely

18  attacks Layman's credibility.  The Court, however, cannot weigh credibility during summary

19  judgment or for the purpose of determining the sufficiency of pleadings.  *See*, *e.g.*, *Nelson v. City of*

20  *Davis*, 571 F.3d 924, 929 (9th Cir. 2009) (summary judgment); *Molski v. Arby's Huntington Beach*,

21  359 F. Supp. 2d 938, 948 (C.D. Cal. 2005) (pleading).

22       With respect to the adequacy of notice as to the fourth alleged remaining barrier, the low-level

23  push plate barrier, the Court finds unpersuasive Plaintiff's argument that that she is entitled to relief

24  from that barrier notwithstanding its acknowledged absence from the operative complaint.  Both of

25  *Oliver*'s justifications for requiring the operative complaint to identify all barriers—notice and

26  reliance—are compelling in this case.  Defendant's extensive remediation efforts attempted to moot

27  the entire FAC.  The record now before the Court indicates that Defendant spent roughly four months

28  and $50,000 in pursuit of that goal.  *See* Polanco Jr. Decl. ¶ 9.  Following remediation, which

United States District Court
Northern District of California

extensively altered the gas station, Defendant could not have known from which barriers Plaintiff still sought relief.  Plaintiff argues that she could not have identified the low-level push plate barrier in her FAC because Defendant's remediation efforts created that barrier.  This argument overlooks the fact that Plaintiff could have sought leave to amend her complaint under Rule 15's liberal standard.  *See* Fed. R. Civ. P. 15(a) (requiring that courts "freely give leave when justice so requires"); *see also id.* 15(b)(1) (raising possibility of amendment during or even after trial); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) (leave to amend given "liberally" unless amendment would be futile); *cf. Rush*, --- F. App'x ---, 2013 WL 1288068, at *1 n.1 (rejecting claim based on barrier first identified by expert in part because plaintiff never sought leave to allege the barrier in an amended complaint).  Here, Plaintiff never sought leave to amend, even after receiving the Layman Supplemental Report and after Defendant's summary judgment motion made it plain that Defendant regarded itself, rightly or wrongly, as having mooted all the barriers identified in the FAC.  Instead of putting Defendant on notice of the barriers from which she still sought relief after remediation, Plaintiff continued to seek summary judgment as to purported barriers which Plaintiff admittedly never identified in her operative complaint.  Defendant incurred additional litigation costs defending against those claims.  *Oliver* and its progeny required Plaintiff to identify all barriers, i.e., to state all her claims for relief, in her operative complaint.  With respect to the low-level push plate barrier, Plaintiff did not.  As a matter of law, then, Plaintiff cannot prevail on claims based on that barrier.

Plaintiff contends that Defendant's actual knowledge of the existence of a barrier satisfies Rule 8 even in the absence of a proper pleading.  *See* Pl. Reply at 3.  Plaintiff is incorrect.  Knowledge of the barrier alone is not enough.  Under *Oliver*, an ADA defendant also must have fair notice that the ADA plaintiff intends to pursue a legal claim based on that barrier.  *Oliver*, 654 F.3d at 908-909; *Paulick*, 2012 WL 2990760, at *12.  Here, by failing to amend her operative complaint, Plaintiff failed to provide adequate notice of her continuing intent to seek relief for the lack of maneuverable space in the restroom.

The Court is not persuaded by Plaintiff's suggestion that she should be allowed to proceed with claims not pled in her operative complaint because *Oliver* left open "the possibility that an

expert report could provide proper notice."  Pl. Reply at 3-4.  It is true that *Oliver* stopped short of announcing an absolute rule, stating rather that, "[i]n general, only disclosures of barriers in a properly pleaded complaint can provide [adequate] notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute."  654 F.3d at 909.  *Oliver* does not, however, explain in what circumstances discovery disclosures *would* adequately substitute for proper pleading.  *See id.*  The Court's research into California district court cases applying *Oliver* revealed that, outside of the class-action context,[7] they have thus far uniformly interpreted *Oliver* to bar claims based on barriers not fairly reflected in an operative complaint.  *Carr*, 2013 WL 3851230, at \*6; *Sharp*, 900 F. Supp. 2d at 1105-08; *Paulick*, 2012 WL 2990760, at \*12; *Strong*, 2011 WL 5374125, at \*4; *O'Campo*, 2011 WL 5241351, at \*2-3.  An unpublished Ninth Circuit case, *Rush*, follows the same approach.  2013 WL 1288068, at \*1 n.1.  Plaintiff is correct that *Oliver* left open at least a possibility that, in some hypothetical case, disclosure of a barrier in an expert report could provide sufficient notice.  This is not such a case, however.

The Court finds unavailing Plaintiff's argument that a policy interest in discouraging piecemeal ADA litigation authorizes her to proceed as to barriers not pled in her operative complaint.  Pl. Reply at 3-4.  Plaintiff cites *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 952 (9th Cir. 2011) for the proposition that "[t]he Ninth Circuit has urged resolution of all barriers in one action."  *Id.* at 3.  Plaintiff's reliance on *Chapman* is misplaced.  The passage Plaintiff cites is a quotation from *Doran*, a case addressing not pleading requirements but constitutional standing requirements for ADA plaintiffs in barrier cases.  *See Chapman*, 631 F.3d at 952 (citing *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1045 (9th Cir. 2008)).  *Chapman* is distinguishable on that basis.  The Court is bolstered in this conclusion by the fact that the plaintiff in *Oliver* made the same argument Plaintiff advances here, and the *Oliver* court rejected it for the same reasons.  *Compare Oliver*, 654 F.3d at 909 (there, plaintiff argued "that the complaint need not give the defendant notice of every barrier for which the plaintiff seeks relief, because a disabled plaintiff who has encountered at least one barrier at a facility can sue to remove all the barriers at the facility related to his specific disability") *with* Pl. Reply at 4

---

[7] *See*, *e.g.*, *Moeller*, 816 F. Supp. 2d at 851 (distinguishing *Oliver* in class-action case); *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011) (same).

(arguing that the "relevant inquiries" for whether a plaintiff can sue to remove an ADA barrier should be whether the barrier exists, whether it relates to a plaintiff's disability, and whether any defense exists). The *Oliver* court concluded that "*Doran* [did] not help [the plaintiff there], because it speaks only to constitutional standing; it sheds no light on what a plaintiff's complaint must include to comply with the fair notice requirement of Rule 8." 654 F.3d at 909. Because Plaintiff's argument rests on *Chapman* and *Chapman* merely quotes *Doran*, Plaintiff's policy argument for relief from Rule 8 pleading requirements fails for the same reasons stated in *Oliver*.

In sum, the low-level push plate barrier is concededly not identified in the FAC in any manner and therefore cannot form a basis for relief. Accordingly, as to that barrier, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion. The FAC does, however, give adequate notice of the accessible-route, entrance-landing, and restroom-space barriers. The Court proceeds to the merits of the claims based thereon.

### B.   LEGAL FRAMEWORK

#### 1.   The ADA

Title III of the ADA prohibits discrimination against people "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To make a prima facie showing of discrimination under Title III here, Plaintiff must show that: (1) she is disabled; (2) Defendant's gasoline station is a place of public accommodation; and (3) Plaintiff was denied access because of her disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). It is undisputed that Plaintiff is disabled and that Defendant's gasoline station is a place of public accommodation. Thus, with respect to each of the remaining three barriers, only the third element is in dispute.

This third element requires Plaintiff to show that Defendant has violated an applicable accessibility standard. *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011) (citing *Chapman*, 631 F.3d at 945; *Donald v. Cafe Royale*, 218 Cal. App. 3d 168, 183 (Cal. Ct. App. 1990)). Different accessibility standards apply depending on when a building was constructed: new construction provisions apply to places of public accommodation constructed after January 26, 1993;

13

1    "readily achievable"  standards apply to buildings constructed before January 26, 1993; and

2    "alteration"  standards apply to post-January 26, 1993 alterations of buildings that existed prior to

3    January 26, 1993.  42 U.S.C. §§ 12181, 12182; *see also Moeller*, 816 F. Supp. 2d at 847;

4    *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 584  (Cal. Ct. App.

5    2008).  The undisputed facts establish that Defendant's gasoline station (i) was constructed in 1969

6    and (ii) was not materially altered until Defendant began remediation efforts in late 2012.  *See* Dkt.

7    No. 58-1, Fact 5.  Accordingly, the subject gas station is governed by the "readily achievable"

8    standard for existing structures for purposes of the instant motions.

9        Under this standard, "barriers must be removed where it is 'readily achievable' to do so."

10   *Moeller*, 816 F. Supp. 2d at 847.  "Readily achievable means 'easily accomplishable and able to be

11   carried out without much difficulty or expense.'"  *M.J. Cable*, 481 F.3d at 730  (quoting 42 U.S.C. §

12   12181(9)).  Where modifications are readily achievable, they must be made in accordance with the

13   ADA's exacting and comprehensive standards: "'obedience to the to the spirit of the ADA' does not

14   excuse noncompliance . . . ."  *Chapman*, 631 F.3d at 945 (quoting *Long v. Coast Resorts, Inc.*, 267

15   F.3d 918, 923 (9th Cir. 2001)).

16       District "courts are generally in agreement that whether barrier removal is readily achievable

17   is an affirmative defense," though the Ninth Circuit has yet to address the issue.  *Wilson*, 479 F.

18   Supp. 2d at 1133 n.7.  Courts also generally agree that defendants may waive the "readily

19   achievable" affirmative defense, for instance, by omitting it from their answer.  *See id.* at 1133-34;

20   *but see Rodriguez v. Barrita, Inc.*, C 09-04057 RS, 2012 WL 3538014, at *10 (N.D. Cal. Mar. 1,

21   2012) (defendants may assert readily-achievable defense after pleading stage absent prejudice to

22   plaintiff).

23   **2.    California Disability Discrimination Statutes**

24       In addition to ADA claims, disabled plaintiffs may also bring causes of action based on

25   California state law.  Two such laws, the Unruh Act and the DPA, incorporate ADA standards such

26   that "[a] violation of the ADA also constitutes a violation of both the Unruh Act and the DPA."

27   *Californians for Disability Rights*, 165 Cal. App. 4th at 586 (citing Cal. Civ. Code §§ 51(f), 54(c)).

28   "Because the Unruh Act is coextensive with the ADA and [unlike the ADA] allows for monetary

damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *M.J. Cable*, 481 F.3d at 731.  The Unruh Act imposes damages "for each and every offense . . . , up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto . . . ." *Id.* § 52(a).  DPA claims operate similarly to Unruh claims; that is, an ADA violation establishes a DPA violation for which money damages and attorney fees may be sought, though the DPA authorizes minimum statutory damages of $1,000 rather than Unruh's $4,000.  *See* Cal. Civ. Code §§ 54.1(d), 54.3(a).  Because the Unruh Act and the DPA "overlap," litigants may seek damages under only one of the statutes.  *Kohler v. Presidio Int'l, Inc.*, CV 10-4680 PSG PJWX, 2013 WL 1246801 (C.D. Cal. Mar. 25, 2013) (citing Cal. Civ. Code § 54.3(c) ("A person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act.")).[8]

## C.   BARRIERS AT ISSUE

### 1.   Accessible Route from the Public Way

#### a.   Prima Facie ADA Violation

Plaintiff alleges that the gas station lacks a "properly identified and configured accessible route" from the "public way" (i.e., sidewalk) to the convenience store entrance.  FAC ¶ 11(b).  At the time that Plaintiff visited the gas station in May 2010, the gas station lacked an ADA-compliant accessible route.  Despite remediation efforts, Plaintiff maintains that the route remains in violation of the ADA.

The ADA permits accessible routes to have a cross-slope of no more than 2 percent.  When Plaintiff's designated expert conducted his initial site visit at the subject gas station, he suggested two "possible" locations for an accessible route.  *See* Layman Initial Report at 16, 27-28.  Defendant built

---

[8] As Plaintiff emphasizes in her briefing, *e.g.*, Pl. Opp'n at 8-9, California has its own accessibility standards, violations of which can support California state-law claims independent of any ADA violations.  *See* CAL. CIV. PRAC. CIVIL RIGHTS LITIGATION § 12:6.50 (describing relationship between Unruh Act, DPA, and ADA).  The Unruh Act, DPA, and the California Health and Safety Code all provide private rights of action independent of the ADA.  At present, however, the Court need not determine whether Plaintiff is entitled to relief under California state law alone.  Plaintiff's ADA claims based on the accessible-route and entrance-landing barriers survive summary judgment and, as set forth in Section III.C.3 *infra*, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims arising from the restroom-space barrier.

United States District Court
Northern District of California

a route that roughly conforms to one suggested by Layman, but, while Plaintiff claims Layman identified a route running in a straight line from the sidewalk to the convenience store entrance (*see* Pl. Reply at 8), the route Defendant actually built bends.  The bend allows Defendant to avoid placing ADA-required "truncated domes" at a point on the sidewalk where there are utility boxes.  Dkt. No. 47-1 ("Dowgialo Decl.") ¶ 36.[9]  According to Plaintiff, however, the bend also causes the route to slope in excess of the 2 percent grade permitted by the ADA.  *See* Layman Supp. Report at 4. Defendant's designated expert, Dowgialo, concedes as much, stating that while "[t]he major portion of the accessible route . . . has a cross slope of less than 2% . . . [,] the first 14 [feet] shows a cross slope of 3.33% . . . ." Dowgialo Decl. ¶ 36.  Dowgialo further opines that the excessively sloped route, though it does not comply with ADA requirements, "complies with the intent of the ADA." *Id.* As a matter of law, neither substantial compliance nor "obedience to the spirit of the ADA" are viable defenses to ADA liability.  *Long*, 267 F.3d at 923.  The evidence before the Court establishes that the slope of the route from the public way does not comply with ADA standards.

### b.    Waiver of Readily-Achievable Defense

Notwithstanding the route's conceded noncompliance with ADA standards, Defendant argues that it is not liable under the ADA because a 2 percent slope along the entire designated route is not "readily achievable."  Plaintiff responds that Defendant has waived the readily-achievable defense due to its conduct during discovery.  The Court disagrees with Plaintiff.  Defendant pled the readily-

---

[9] Plaintiff objects that Dowgialo's declaration, as well as that of David Polanco Jr., contain impermissible legal argument.  Dkt. Nos. 47-2 ("Polanco Jr. Decl."), 58-10 ("Obj'n to Dowgialo Decl.") & 58-11 ("Obj'n to Polanco Jr. Decl.").  The Court agrees, and does not consider the legal arguments put forth in the declarations to comprise part of their expert opinions.  The Court applies the same principle to those portions of Plaintiff's expert's reports that do the same.

Defendant argues that Plaintiff's evidentiary objections should be overruled because they were filed separately from Plaintiff's opposition brief, in contravention of this Court's Civil Local Rule 7-3(a).  Def. Reply. at 1 (citing Civ. L.R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum.")).  The essence of Defendant's opposition is that, by ignoring Rule 7-3(a), Plaintiff fit more argument into her brief than she otherwise could have.  *See id.*  The Court agrees, but given that the Dowgialo and Polanco Jr. declarations contain extensive legal argument themselves, the Court determines that, although neither party confined its arguments to the briefs, neither party obtained an unfair advantage from doing so. Counsel for both parties are reminded of their obligation to know and follow this Court's Local Rules.  *See* Civ. L.R. 11-4(a)(2), 11-4(a)(4).  Failure to do so may result in sanctions.

1  achievable defense in its Answer, thereby preserving the defense for Rule 8 purposes.  *See* Fed. R.

2  Civ. P. 8(c)(1); Answer ¶ 22.  Even if it had not, the Federal Rules contemplate raising certain

3  defenses for the first time at trial, *see* Fed. R. Civ. P. 12(h)(2)(c), and the Ninth Circuit has liberalized

4  the requirement for when affirmative defenses are presented, *Simmons v. Navajo Cnty., Ariz.*, 609

5  F.3d 1011, 1023 (9th Cir. 2010).

6       Plaintiff argues principally that Defendant "waived" the readily-achievable defense through

7  discovery responses in which Defendant declined to respond to certain discovery requests on the

8  ground that it was not then asserting the defense.  *See* Pl. Opp'n at 13-15.  Federal Rule of Civil

9  Procedure 26(e) places litigants under an affirmative duty to supplement non-deposition discovery

10  responses, even after the discovery cut-off date.  *See* Fed. R. Civ. P. 26(e); CAL. PRAC. GUIDE FED.

11  CIV. PRO. BEFORE TRIAL § 11:1241.  According to Plaintiff, Defendant agreed to do so and did not.

12       Failure to supplement triggers the sanctions provisions of Rule 37(c): the nonsupplementing

13  party may not use the information it withheld "to supply evidence on a motion, at a hearing, or at a

14  trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This

15  sanction is intended to be "self-executing" and "automatic," though its "harshness" is mitigated by

16  Rule 37's exceptions for substantially justified or harmless withholding.  *Yeti by Molly, Ltd. v.*

17  *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

18       Here, undisputed evidence establishes that Defendant declined to answer interrogatories or

19  produce requested financial documents focused on the readily-achievable defense on the basis that

20  Defendant was not then asserting the defense.  Defendant qualified these refusals by promising to

21  supplement its responses in the event that it did assert the readily-achievable defense.  Def. Supp.

22  Interrog. Resp. at 11-15; Def. RFP Resp. at 10-11.  Apparently, the parties stipulated that Defendant

23  could decline to respond in this fashion, as Defendant's counsel indicated on the record at a

24  deposition.  *See* Polanco Sr. Dep. at 20:15-19.  Pointing to these statements by Defendant, Plaintiff

25  argues that Defendant has laid an "ambush" by asserting the readily-achievable defense for the first

26  time only after the close of discovery.  Pl. Opp'n at 15; Pl. Reply at 5.  Plaintiff suggests that Rule 37

27  requires automatic exclusion of any evidence that Defendant would introduce in support of the

28  readily-achievable defense.  Pl. Opp'n at 15.

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1    Plaintiff is incorrect.  Rule 37 excuses failures to supplement discovery responses that are

2    "substantially justified," and even where such failures are not substantially justified, a court may

3    impose lesser sanctions than complete exclusion.  Here, Defendant's failure to supplement its

4    discovery responses was substantially justified by Plaintiff's continuing failure to amend, or even

5    seek leave to amend, its operative complaint.  The FAC does not notify Defendant of the specific

6    barriers supporting Plaintiff's claims *following remediation*.  That fact partly excuses Defendant's

7    failure to identify the barriers for which Defendant would assert the readily-achievable defense.

8    Further, Defendant has made a showing that some representations in Plaintiff's expert's initial and

9    supplemental expert reports were at least arguably inconsistent.  These apparent inconsistencies make

10   Defendant's noncompliance yet more understandable, even if not altogether justified.  Reliance on an

11   opposing party's retained witness to ascertain the scope of one's own obligations under the ADA is

12   not fully justifiable: it is the pleadings rather than the ad hoc statements of a nonparty witness that

13   determine what is at issue in a lawsuit.  But, given Plaintiff's reluctance to amend her pleading, the

14   Court finds that Defendant's reliance on Layman's representations was "substantially" justifiable.

15   Accordingly, the Court declines to impose Rule 37 sanctions for Defendant's failure to supplement

16   its discovery responses before asserting the readily-achievable defense.[10]  Defendant may assert its

17   readily-achievable defense as to the accessible-route barrier.

18                   c.      Merits of Claim Based on Lack of Accessible Route

19          Having determined that Defendant may assert a readily-achievable defense as to the route

20   from the public way, the Court **DENIES** both parties' summary judgment motions as to that barrier.

21   The evidence establishes that the route designated as accessible by Defendant is not actually ADA-

22   compliant.  However, a triable issue of fact remains as to whether making the route ADA-compliant

23   is readily achievable.  Defendant argues that it is not, emphasizing that correcting the slope of the

24   route would require it to demolish the existing asphalt at the gas station, regrade the earth below, and

25

26   [10] The Court reaches the issue of Rule 37 sanctions despite Plaintiff's failure to present a proper Rule
     37 motion.  *Cf. Yeti by Molly*, 259 F.3d at 1106 (Rule 37 sanctions are "self-executing").  The Court's
27   Local Rules required Plaintiff to seek Rule 37 sanctions in a separately filed motion.  *See* Civ. L.R.
     37-4(a), 7-8(a).  Instead, she raised the issue of Rule 37 sanctions in her summary judgment
28   opposition brief.  Pl. Opp'n at 15.

repave the station, which would result in expenses not only from actually performing the work but also lost business while the station closed for renovation.  Plaintiff argues, in essence, that Defendant can afford it.

The ADA provides:

> In determining whether an action is readily achievable, factors to be considered include—
>
> (A)   the nature and cost of the action needed under this chapter;
> (B)   the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
> (C)   the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (D)   the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9).

The evidence now before the Court does not sufficiently address the factors identified in Section 12181(9).  For example, the parties dispute the meaning of statements Polanco Sr. made at his deposition relating to his plans to remodel the gas station at a cost of roughly $700,000.  Plaintiff urges the Court to interpret these statements to mean that Defendant has enough "overall financial resources" to pay for the needed alterations to the gas station asphalt and weather the loss of revenue. Defendant responds, essentially, that Plaintiff has taken the statements out of context.  However, the context that would allow the Court to determine which side is correct is lacking.  Defendant appears to have declined to produce discovery that might have supplied a more complete picture of its finances.  Defendant's readily-achievable defense is not amenable to summary judgment on the record now before the Court, especially in light of Defendant's apparent failure to disclose relevant information even after asserting its readily-achievable defense.  The record is too threadbare to support granting either party summary judgment as to the readily-achievable defense.

The Court concludes that there is a triable dispute as to whether compliance with the ADA's requirement of an accessible route from the public way to the accessible entrance was readily achievable.  As such, the Court **DENIES** both summary judgment motions as to the accessible-route

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1    barrier.  The Court deems the marked accessible route's non-compliance with ADA slope

2    requirements conclusively established for purposes of trial.

3                **2.        Slope of Entrance Landing**

4        Plaintiff alleges that "[p]roper 60" x 60" door landings are not provided at all accessible

5    entrances and exits" of the subject gas station.  FAC ¶ 11(n).  The record before the Court shows that,

6    before remediation, the convenience store entrance had a noncompliant door landing in the form of a

7    narrow slab of concrete reminiscent of a traditional sidewalk.  As part of its remediation efforts,

8    Defendant expanded the size of the landing by pouring new concrete around the existing slab.

9    Plaintiff claims that the new, enhanced landing, while concededly at least 60 inches by 60 inches, is

10   nevertheless not "proper" because it slopes in excess of 2 percent.

11       Defendant does not assert the readily-achievable defense with respect to the entrance-landing

12   barrier.  Rather, Defendant asserts that the slope is not actually excessive and that the entrance

13   landing is therefore ADA-compliant.  *See* Def. Reply at 8.  Defendant's expert, Dowgialo, and

14   Plaintiff's expert, Layman, offer conflicting measurements of the slope of the landing.  *Compare*

15   Layman Decl. ¶ 5(c) ("The slope of the landing at the entrance door measures 2.9%.") *with* Dowgialo

16   Decl. ¶ 54 ("Layman is wrong"; the slope is 1.55%.).  Defendant urges the Court to reject Layman's

17   measurements and proffers evidence to impeach him.  Polanco Jr. Decl. ¶ 79 (declaring that Polanco

18   Jr. saw Layman place his level unevenly and use a level shorter than the width of a typical

19   wheelchair).  The Court, however, may not weigh credibility in summary judgment proceedings.

20   Resolving the dispute as to the slope of the landing will require the Court to evaluate not only each

21   expert's credibility, but the process by which they reached their conclusions.  The record as it exists

22   does not permit the Court to make an informed determination.

23       In sum, the two experts' conflicting measurements present a material dispute over the actual

24   slope of the entrance landing which the Court cannot resolve on the record before it.  Therefore, the

25   Court **DENIES** both parties' summary judgment motions as to this issue.

26               **3.        Insufficient Restroom Space**

27       Plaintiff's allegation that the gas station's "restroom does not provide sufficient space for a

28   wheelchair to maneuver," FAC ¶ 11(gg), forms the basis of separate claims for relief under the ADA

United States District Court
Northern District of California

and California state law.  It is undisputed that the post-remediation restroom complies with ADA structural requirements.  *See* Joint Fact Stmt., Chart 3 (citing purported CBC violations but not ADA).  Accordingly, the Court **DENIES** Plaintiff's summary judgment motion, and **GRANTS** Defendant's cross-motion, with respect to the ADA claim premised on a lack of insufficient space in the restroom.

With respect to Plaintiff's state-law claims arising from the restroom-space barrier, the Court determines that they raise "a novel or complex issue of State law" and declines to exercise supplemental jurisdiction over them.  28 U.S.C. § 1367(c)(1).  For the reasons set forth below, the Court **DISMISSES** Plaintiff's state-law claims to the extent they are predicated on the restroom-space barrier.

Section 1115B.3.2(3) of the 2010 CBC requires an accessible toilet facility to provide a "maneuvering space" in front of the toilet measuring at least 60 inches wide and 48 inches deep.  The undisputed facts establish that the maneuvering space provided in front of the toilet at Defendant's gas station is less than 48 inches deep.  Layman Supp. Report at 5 (clear space in front of toilet is only 39.25 inches deep); Polanco Jr. Decl. ¶ 25 (during remediation, Polanco Jr. decided not to provide 48 inches of clearance because doing so would involve moving a load-bearing steel wall).  Defendant argues that the restroom-space barrier is nevertheless not actionable because it falls within Exception 3.6 to Section 1134B.2 of the 2010 CBC.  Def. Opp'n at 24-25; Def. Reply at 11-12.

The general rule from which Defendant seeks exception is that, although older buildings do not need to comply with current accessibility requirements, any alterations to those buildings do.  *See* 11 CAL. JUR. 3d BUILDING REGULATIONS AND DEVELOPMENT § 217 (citing Cal. Gov't Code 4456; Cal. Health & Safety Code §19959).  However, "[t]his requirement shall only apply to the area of specific alteration . . . and shall not be construed to mean that the entire building or facility is subject to" current accessibility standards.  Cal. Health & Safety Code § 19959.  The 2010 CBC reflects this statutory rule at Section 1134B.2: "When alterations, structural repairs or additions are made to existing buildings or facilities, they shall comply with all provisions of Division I—New Buildings, *except as modified by this division*.  These requirements shall apply only to the area of specific alteration, structural repair or addition and shall include . . . sanitary facilities . . . ."  2010 CBC,

Section 1134B.2.1 (emphasis added).  The regulation then provides a series of exceptions to this general rule.  The exception upon which Defendant relies, Exception 3.6, stands for the proposition that alterations undertaken "solely for the purpose of barrier removal" pursuant to ADA or CBC requirements "shall be limited to the actual work of the project."[11]

In this case, the record amply discloses that Defendant altered the restroom for the purpose of complying with the ADA and, in doing so, substantially remodeled the restroom.  Defendant corrected the slope of the floor; moved a non-load-bearing steel wall; attempted but ultimately decided not to move another, load-bearing steel wall; changed the position of the toilet within the restroom; installed a new "door and door closer"; and replaced or removed numerous fixtures.  Polanco Jr. Decl. ¶¶ 23-35; *see also* Layman Decl. ¶ 9 (describing new configuration of restroom).

Defendant appears to argue that, because this remediation effort was undertaken "for the purpose of barrier removal pursuant to" the ADA, *all* aspects of the restroom are exempt from CBC compliance, including the restroom-space barrier.  *See* Def. Opp'n at 24-25; Def. Reply at 11-12.  Plaintiff's principal response is that Defendant "was not legally permitted to make alterations which reduced the accessibility of the restroom."  Pl. Opp'n at 7.  For support, Plaintiff quotes Section 1134B.1.  That regulation provides, in pertinent part, that no alteration "shall be undertaken which decreases or has the effect of decreasing accessibility or usability of a building or facility below the requirements for new construction at the time of renovation, structural repair, alteration or addition."

The parties' arguments raise the question of not just *whether* Exception 3.6 applies, but *how*.  Plaintiff, in a one-sentence argument, posits that Defendant may not avail itself of Exception 3.6 if its remediation efforts reduced the accessibility of the restroom.  The issue requires more fulsome consideration than Plaintiff has given it.  Section 1134B.1 refers to alterations which "decrease[] or ha[ve] the effect of decreasing accessibility or usability of a building or facility . . . ."  Plaintiff quotes this language, but never explains how it applies here.  Specifically, Plaintiff does not explain whether the "accessibility or usability of a building or facility" is to be determined holistically by evaluating

---

[11] Exception 3.6 lists alterations that might be undertaken for the purpose of barrier removal, "including" installing grab bars in toilet stalls; rearranging toilet partitions to increase maneuvering space; insulating lavatory pipes under sinks to prevent burns; installing a raised toilet seat; installing a full-length bathroom mirror; and repositioning the paper towel dispenser in a bathroom.

United States District Court
Northern District of California

the overall accessibility or usability of the facility or building, or, on the other hand, by holding each feature and fixture up to the applicable standard in isolation.  The 2010 CBC does not define "usability," but it does define "accessibility" as "the *combination* of various elements in a building, facility, site, or area, or portion thereof which allows access, circulation and the full use of the building and facilities by persons with disabilities in conformance with this chapter."  2010 CBC, Section 1102B (emphasis supplied).  The regulation defines "facility" as "a building, structure, room, site, complex *or any portion thereof* that is built, altered, improved or developed to serve a particular purpose.  Facilities shall include all or any portion of buildings, structures, site developments, complexes, equipment, roads, walks, sidewalks, passageways, parking lots or other real or personal property located on a site."  *Id.*  The interaction of these two definitions in Section 1134B.1 is unclear: the definition of "accessibility" would appear to commend a holistic evaluation that takes elements in "combination," but the definition of "facility" appears to militate for isolated scrutiny of each "portion" of a room.  Plaintiff, not having identified this issue, cites no authority bearing on which approach is appropriate.  Nor has the Court's independent research revealed any.  This question alone, then, appears to be both novel and complex, as contemplated by 28 U.S.C. § 1367.  It may involve a delicate question of California policy which this Court declines to resolve, especially in the absence of extensive, directly responsive briefing.

Accordingly, the Court exercises its discretion to **DECLINE** supplemental jurisdiction over Plaintiff's state-law claims based on the restroom-space barrier.  Having already found that the restroom does not violate the ADA, the Court **DISMISSES** both the federal and state claims based on that alleged barrier.  With respect to the state law claims, the dismissal is without prejudice.

## IV.   CONCLUSION

FOR THE REASONS SET FORTH ABOVE, the Court **HEREBY ORDERS** as follows:

1.   With respect to the barriers alleged in Plaintiff's First Amended Complaint at paragraphs 11(a), 11(c) through (m), 11(o) through (ff), and 11(hh) through (nn), inclusive, the Court **DENIES** Plaintiff's motion for summary judgment as to both her ADA and state-law claims and **GRANTS** Defendant's cross-motion.  It is undisputed that those barriers have been remediated and the claims based on them are moot.

United States District Court
Northern District of California

2.     With respect to the low-level push plate barrier, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion because the alleged barrier is not identified in the First Amended Complaint.

3.     With respect to the barriers alleged in Plaintiff's First Amended Complaint at paragraphs 11(b) (alleging the lack of a "properly identified and configured accessible route" from the public way) and 11(n) (alleging the lack of "[p]roper 60" x 60" door landings" at the accessible entrance), the Court **DENIES** both parties' motions for summary judgment.  Both barriers are identified in the First Amended Complaint. With respect to the accessible route, there is a triable issue as to whether bringing the accessible route into conformity with applicable standards is readily achievable.  With respect to the door landing, there is a triable issue as to the slope of the landing.

4.     With respect to the barrier alleged in the First Amended Complaint at paragraph 11(gg) ("sufficient space for a wheelchair to maneuver" in the restroom), the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion with respect to Plaintiff's ADA claim and **DECLINES** supplemental jurisdiction over the state-law claims based on this barrier.  The state law claims are **DISMISSED WITHOUT PREJUDICE.**

This Order terminates Docket Nos. 46 and 47.

**IT IS SO ORDERED.**

**Dated:** August 23, 2013

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**